Smith *v.* Smith.

## SMITH *v.* SMITH *et al.*

S. set forth in his bill that S. B. & Co. obtained judgment against him, in February, 1840, for the sum of two hundred and thirty-four dollars, upon which execution was issued, and levied upon eighty acres of his land, which was, in May, 1842, sold to G., as attorney for S. B. & Co. In May, 1844, and some time after the period for redeeming the land had passed, G. conveyed it to C., one of the firm of S. B. & Co. The bill charged that the sale was not duly advertised, and that since the sale, S. had redeemed the land by paying the amount of the judgment to S. B. & Co. The answer of S. B. & Co., duly sworn to, admits the sale of the land as alleged, but denies that it was not legally advertised and properly conducted, and utterly denies that S. had redeemed the land from the sale, or paid one dime towards it; but explains that S. S., the brother of S., had paid to them $218, 28, which was placed to the credit of said S. S. on their books, with the understanding that when he paid the balance of the judgment against S., with the additional sum of about $400, which they claimed to have against him, that they would convey the land to S. S., in trust, for the wife and children of S.; that the sum of $218, 28 was never applied towards redeeming the land, but in 1843 was paid over to the administrator of S. S,; that S. was in no way recognized in the transaction, and that the only pay they had received on the judgment was from the sale and purchase of the land through G., their attorney. The deposition of G. supports the answer in many particulars; but the depositions of B. and S. prove an admission from C. that the judgment had been paid off, and that the land would be deeded to S. only upon conditions similar to those set forth in the answer of S. B. & Co. Held, that the admission of C. was too ambiguous to justify the belief that S. had satisfied the judgment, otherwise than by the land which was sold under execution, and that such testimony was not sufficient to overcome the more definite proof by G. and the explicit answer of S. B. & Co. under oath, strengthened by the lapse of time, no proof of effort, and no receipt of payment by S. Held

also, that the understanding with S. S. had been rescinded by his administrator, in demanding and receiving back the funds he had deposited with S. B. & Co.

Where testimony is ambiguous, and there is doubt as to its correct application to the facts in question, the promotion of truth, and justice to the witnesses, require that construction which will render it as consistent as possible with the opposing evidence.

IN EQUITY. Appeal from the Des Moines District Court.

*M. D. Browning* and *D. Rorer,* for the appellant.

*Grimes* and *Starr;* for the respondents.

*Opinion by* GREENE, J. Jeremiah Smith filed a bill in chancery against Smith, Brothers, & Co. in May, 1845. It sets forth that on the 17th day of February, 1840, the defendants obtained a judgment against complainant for the sum of two hundred and thirty-four dollars, in the district court of Des Moines county; upon which a pluries execution was issued on the 9th day of March, 1841, and a levy made upon eighty acres of his land; which, on the 15th of May following, was sold to James W. Grimes, Esq., as attorney for the defendants, in satisfaction of the execution : that subsequent to the redemption term, Grimes obtained a sheriff's deed for the land, and conveyed the same, on the 31st of May, 1844, to John Cavender, one of the defendants ; that the sheriff's sale was not duly advertised; and that since the sale he has redeemed the land by paying off the whole amount of the judgment to Smith, Brothers, & Co. The defendants in their answer, which is duly sworn to, admit the judgment, execution, and sale of land as alleged in the bill; but deny that the sale was not duly and legally advertised, and aver a full compliance with all the forms and requirements of law, utterly denying that the complainant had redeemed the land from the sale, or paid one dime towards the redemption. Explaining, however, that Samuel Smith, the brother of the complainant, paid to them the sum of two hundred eighteen dollars and twenty-

Smith v. Smith.

eight cents, which was passed to said Samuel's credit on their books; with the understanding, that when he paid the balance of the judgment, and an additional sum of about four hundred dollars, which they claimed to have against said Jeremiah, they would convey the land to Samuel, in trust, for the wife and children of the complainant; and that, in 1843, the said sum of $218 28, having never been applied to the redemption of the land, was paid over to the administrator of said Samuel Smith. The answer also alleges that Jeremiah Smith was in no way known or recognized in the transaction; and that the only pay they ever received on the judgment against him was from the sale and purchase of the land through their agent, Grimes.

In support of the evidence given in the answer, the deposition of James W. Grimes shows, that he had uniformly acted as agent for the defendants, and had charge of the land in question; that he had paid taxes upon it for them, and redeemed it from a former tax-sale; and that no attempt had been made with him, or within his knowledge, by the complainant, or any one for him, to redeem the land.

The depositions of Browning and Leffler are adduced in support of the averment in the bill, that complainant had redeemed the land and satisfied the judgment. They prove an admission from Cavender, one of the defendants, that the judgment against Jeremiah Smith in their favor had been paid off and satisfied; but that they would make no deed except upon certain conditions. These conditions, as set forth in said depositions, are substantially similar to those specified in the defendant's answer. Upon the bill, answer, and these depositions, setting forth in detail the facts which we have briefly recited, the decree of the district court was rendered for the defendants.

Our only difficulty in arriving at a satisfactory conclusion, on reviewing this case, is in giving a correct application to Cavender's admission of payment. From a careful examination of all the facts and concurring circumstances established by the evidence, we are unable to arrive at that conclusion

which is so ingeniously urged upon us by complainant's counsel. The general and vague acknowledgment of Cavender, that the judgment had been satisfied, might very consistently apply to the satisfaction arising from the sale of the land, and subsequent transfer to him. It is true that this view, taken abstractly from other facts established by the history of this transaction, might not appear in unison with the proposal to deed the land upon the payment of said four hundred dollars, which they held against Jeremiah Smith, unless made with the express or implied understanding, that the funds of S. Smith in their hands should be retained and applied upon the amount of the old judgment.

The testimony, showing Cavender's confession of payment, is too ambiguous to justify the belief that Jeremiah Smith paid Smith, Brothers, & Co., the amount of their judgment against him, which had been satisfied by the purchase of his land; especially when taken in connection with the deposition of Grimes, and the responsive answer of defendants under oath, denying, in the most positive and explicit terms, that the land had ever been redeemed, or any portion paid towards the judgment, otherwise than by the purchase of the property. Where testimony is ambiguous, as in this case, and there is a doubt as to its correct application to the facts in question, the promotion of truth, and justice to the witnesses require that construction which will render it as consistent as possible with the opposing evidence.

Influenced by this rule, the concurrence of proof establishes the probability that complainant never entered into an arrangement with the defendants to pay for or redeem the land in dispute; and the imperfect understanding with Samuel Smith was never matured, but was utterly rescinded by the administrator of his estate, in demanding and receiving back the funds in the hands of defendants. However much importance may be attached to this arrangement, we cannot see how it can inure to the individual benefit of the complainant.

Again, the lapse of time, running for years after the redemption limitation, without any apparent effort to redeem, or

Smith *v.* Smith.

proposal to pay; the production of no receipt, or other voucher of payment, so usual in all business, and particularly essential in land transactions, give strength to our conclusion, that the land never has been redeemed.

The decree of the district court is therefore affirmed.

*Dissenting opinion by* KINNEY, J. I cannot come to the same conclusion in this case, as have a majority of the court.

The bill alleges that the complainant redeemed the land by paying off to said Smith, Brothers, & Co., the whole amount of said judgment, with interest and costs, and that said amount so paid was received by them as the amount due on said judgment.

The answer utterly denies that said land was redeemed or anything paid by said complainant towards redeeming the same. This allegation in the bill, and peremptory denial in the answer, make the issue to be tried by the court.

As the answer is sworn to, the bill should be dismissed for the want of equity, unless sustained by the testimony of two witnesses, or one witness and corroborating circumstances, in which case (in the absence of testimony fortifying the answer,) the bill must be taken as true.

In support of the bill, Browning swears that in the summer of 1844, he called at the store of the defendants in St. Louis, and informed John Cavender, one of the defendants, that he was requested by the complainant to call and see him about a reconveyance of the land. Witness was under the impression that there was a small balance due upon the judgment on which the land was sold, and so informed Cavender, and asked him what the balance was, as he had money in his hands belonging to the complainant, and would pay it. Cavender then told the witness that the judgment had all been paid off and satisfied, but that he would not convey the land, until the amount of a certain note, which complainant had transferred to the firm of Smith, Brothers, & Co., was paid.

Leffler swears that he was present at the time referred to by Browning, and that Cavender told Browning that the judg-

ment against Smith had been paid, and that Cavender said (in reply to a question by Browning, if said Smith was entitled to a deed), that the judgment was paid off; but that they did not intend to relinquish their claim against Smith, until they had paid a claim which Smith had transferred to them upon a man in Illinois, which had been dishonored. Here we have the admissions of Cavender, one of the firm, and the one to whom the deed had been made by Grimes, that the judgment upon which the land was sold had been paid and satisfied. The allegation in the bill that the judgment had been paid and satisfied, being thus sustained by two witnesses, I think it sufficiently corroborated to hold the defendants to proof of the responsive matter contained in the answer.

But the answer sets up new matter extraneous and irresponsive to the charge in the bill, which I think has had great influence upon the court, in the decision which has been made. The answer states that one Samuel Smith paid to the defendants $218, 28, which was passed to his credit, and that there was an understanding and agreement that when he paid over to them the residue that might be upon said judgment, with costs and interest, and the additional sum of $400, which was due defendants upon a dishonored note, that they would convey the land to Samuel Smith, in trust for the wife and children of the complainant. In another part of the answer, the defendants state that this money had been credited by them to said Samuel Smith ; that it was the individual money of said Samuel, and that Jeremiah was not known in the transaction. That the money has been paid over to the administrator of said Samuel, since deceased, and that no portion of it ever was applied towards paying off said judgment.

This portion of the answer, I think not only irresponsive to the bill, but proves conclusively that the money of Samuel Smith was not appropriated towards paying the judgment, nor received for that purpose, and consequently Cavender could not be understood as having referred to this money in his conversation with Browning and Leffler, with which the judgment had been paid off and satisfied. This conclusion is also dedu-

cible from the fact, that the amount collected for Samuel Smith was not sufficient to pay the judgment, and Cavender having told Browning that the judgment was satisfied, no reference could have been had to the money in defendant's hands belonging to said Samuel Smith. From the deposition of Browning, taken by the defendants, it appears that in the same conversation, Cavender told witness to inform the administrator of Samuel Smith of the amount of money in their hands belonging to the estate, subject to his order, and in pursuance of this information the money was subsequently drawn by the administrator: all of which makes it perfectly certain that the judgment was not paid with this money, and excludes all presumption that Cavender had any reference to its having been paid in that manner.

It appears to me clear then : 1. That the judgment had been satisfied by Smith, although after the time of redemption had expired. That the defendants are stopped from saying that it was not paid in time, and are bound to convey the land.

2. That if the complainant had satisfied and paid off the judgment, the defendants could not as a condition precedent to the conveyance, require the payment of another claim, unless he can prove that to have been the condition upon which the conveyance was to have been made. If these positions are well taken, we are only left to the inquiry ; was the judgment paid? Upon this point I do not desire any better testimony than the admission of Cavender himself, who states explicitly that the judgment was satisfied. This testimony is neither contradicted nor explained away. Supported by two witnesses, it neutralizes that portion of the answer denying payment, and the bill in that particular must be taken as true. But my brother judges think that Cavender must have meant the payment of the judgment, by a sale of the land. This cannot possibly be a reasonable presumption, as Cavender only attached one condition to the conveyance, which was the payment of the dishonored claim. The judgment was some $250, and this I cannot think the defendants intended to

give to complainant, and particularly as there is not any evidence showing Smith's inability to pay the $400. And yet we are forced to this conclusion, and that the defendants would gratuitously surrender up the judgment, by presuming that Cavender meant that the judgment was paid by the sale of the land.

The plain import of the language, "that the judgment was paid off and satisfied," appears to me to convey the idea, not by a sale of the land to the defendants but by actual payment in the ordinary acceptation and meaning of the word. The facts of the case, and the language of Cavender, fasten the conviction upon my mind that the judgment had been paid independent of and subsequent to the sale of the land. A different conclusion appears to be entirely unauthorized by the testimony.

But it is said that the complainant does not specify in his bill how he paid this judgment. I was not aware that there was but one mode of payment known to the law, and if the complainant states, as he has in his bill, that he paid off the judgment, it will be presumed that he paid it in the currency of the country. Even a want of particularity in the bill ought not to bar the door of equity, if the complainant is otherwise entitled to it. In this case, it appears to me that the complainant has not only shown himself worthy of relief, but that injustice may be done by withholding the relief sought.